Jay SHATTING, Appellant,

v.

DILLINGHAM CITY SCHOOL DISTRICT, Dillingham City School Board and the State of Alaska, Appellees.

No. 4240.

Supreme Court of Alaska.

Sept. 26, 1980.

John R. Strachan, Anchorage, for appellant.

William M. Bankston, Anchorage, for appellees Dillingham City School District and Dillingham City School Board.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee State of Alaska.

OPINION

Before CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

BURKE, Justice.

In this case, a non–tenured teacher challenges a school board's decision not to renew his contract. We conclude · that the school board acted properly.

Jay Shatting, a non–tenured teacher, was employed to teach in the Dillingham City School District during the 1975–76 and 1976–77 school years. In May 1977, the Dillingham City School Board (Board) informed Shatting by letter that he would not be retained for the following year.[1] When Shatting requested a statement of cause, pursuant to AS 14.20.175(a),[2] the Board sent him a second letter setting forth the following reasons for its decision:

1. Your classes are not challenging enough to students with high ability.
2. Your use of abusive language when dealing with students.
3. Lack of interest in teaching.
4. Your changing moods in the classrooms.
5. Continually out of classroom.

Shatting then requested a hearing, likewise pursuant to AS 14.20.175(a). The Board held a public hearing on June 14, at which sworn testimony was taken. Shatting was represented by counsel, who called witnesses and cross–examined opposing witnesses. Following the hearing, the Board voted not to retain Shatting, and on June 22, it sent him written notice of that decision. One month later, Shatting filed both a complaint and a notice of appeal in superior court, contending that the Board's decision not to retain him was illegal because it was arbitrary and capricious, and not based on properly established good cause. Shatting's suit named as defendants the Dillingham City School District (District), the Dillingham City School Board, and the State of Alaska.

In August, in response to the State's motion for judgment on the pleadings under Civil Rule 12(c), the superior court dismissed Shatting's suit against the State because it was not a proper party defendant. The grounds for the decision were that (1) it had delegated control of educational functions to the City of Dillingham, (2) Shatting was not an employee of the State, and (3) the State had no authority to hire or fire Shatting. In response to a motion to dismiss, the court granted summary judgment in favor of the Board and the District,[3] after concluding that the Board had complied with all statutory requirements and that none of Shatting's constitutional rights had been violated. This appeal followed.

### 1. Appeal of the District and the Board

The motion to dismiss that was filed by the District and the Board did not specify under which rule the motion was being made. The superior court, however, treated the motion as if it were a motion for sum-

---

1. Alaska's statutory scheme recognizes a distinction between "nonretention" and "dismissal." AS 14.20.207 provides in pertinent part:
   In §§ 10 210 of this chapter
   .  .  .  .  .
   (5) "nonretention" means the election by an employer not to re–employ a teacher for the school year or school term immediately following the expiration of the teacher's current contract; and
   (6) "dismissal" means termination by the employer of the contract services of the teacher during the time a teacher's contract is in force, and termination of the right to the balance of the compensation due the teacher under his contract.

2. AS 14.20.175(a) provides:
   *Nonretention.* (a) A teacher who has not acquired tenure rights is subject to nonretention for the school year following the expira-

tion of his contract for any cause which the employer determines to be adequate. However, at his request, the teacher is entitled to a written statement of the cause for his nonretention. The boards of city and borough school districts and regional educational attendance areas shall provide by regulation or bylaw a procedure under which a nonretained teacher may, at his request, be heard informally by the board.

3. The grounds for dismissal alleged in the motion were (1) a non–tenured teacher has no right to judicial review of a school board's decision not to retain him, (2) Shatting did not allege any violation of his constitutional rights, (3) Shatting was not protected from "arbitrary and capricious" nonretention because he had no constitutionally protected interest in his job, and (4) the court lacked subject matter jurisdiction.

mary judgment.[4] Accordingly, we shall review its ruling under the standards applicable to the granting of a motion for summary judgment.

The issues to be determined are whether there were genuine issues of material fact and, if not, whether the District and the Board were entitled to judgment as a matter of law. Rule 56, Alaska R.Civ.P.; *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). In reaching our decision we must draw all reasonable inferences in favor of Shatting, the non–moving party. *Clabaugh v. Bottcher*, 545 P.2d 172, 175 n.5 (Alaska 1976).

Although there is apparently disagreement over whether particular events occurred in Shatting's classroom and whether the District conducted a proper evaluation of Shatting as required by Department of Education regulations, these facts were not material to the superior court's determination of this case. It is only issues of *material* fact that preclude the granting of a motion for summary judgment. *See Carlson v. State*, 598 P.2d 969, 972 n.5 (Alaska 1979). The issues before the superior court were: (1) whether Shatting was entitled to judicial review of the Board's decision not to retain him and (2) whether the Board, on the basis of the information presented to it, acted properly in deciding not to retain Shatting. The material facts pertaining to these two issues were not in dispute. Thus, the only issue left for our determination is whether the Board and the District were entitled to judgment as a matter of law.

**2. Right to Judicial Review**

■ The superior court concluded that Shatting had no right to judicial review of the Board's decision. In reaching this conclusion the court relied on AS 14.20.205, which provides: "If a school board reaches a decision unfavorable to a teacher, the teacher is entitled to a de novo trial in the superior court. However, a teacher who has not attained tenure rights is not entitled to judicial review according to this section."

We believe the superior court erred in concluding that AS 14.20.205 totally precludes judicial review in cases such as this. While the statute does not extend the tenured teacher's right to a trial *de novo* to a non–tenured teacher such as Shatting, neither does it preclude a more limited form of judicial review of the school board decision. We therefore hold that Shatting had a right to judicial review, on the record, of the Board's decision.[5]

**3. Decision Not to Retain Shatting**

Although the superior court found that Shatting did not have a right to judicial review of the Board's decision, the court did, in fact, review the record of the proceedings leading to that decision and determined that the Board had acted properly. We affirm the decision of the superior court.

■ AS 14.20.175(a) provides in part: "A teacher who has not acquired tenure rights is subject to nonretention ... for any cause which the employer determines to

4. When matters outside the pleadings are presented to the court, Rules 12(b) and 12(c), Alaska R.Civ.P., authorize the court to treat motions to dismiss under Rules 12(b)(6) (failure to state a claim) and 12(c) (judgment on the pleadings) as motions for summary judgment under Civil Rule 56. The superior court in this case had before it, in addition to the pleadings, the entire administrative record, including a transcript of the hearing before the Board and copies of the affidavits submitted to the Board. *See Stuyvesant Ins. Co. v. District Director, Immigration & Naturalization Serv., United States Dep't of Justice*, 407 F.Supp. 1200, 1202 (N.D.Ill.1975) (filing administrative record converted motion to dismiss to motion for summary judgment; applying Fed.R.Civ.P. 12(b)).

5. Although a review on the record is all that is required, in its discretion the superior court may grant a trial *de novo*. *See* AS 22.10.020 ("hearings on appeal from a final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, grants a trial de novo, in whole or in part").

AS 14.20.175(a) provides that school boards shall establish a procedure under which a nonretained teacher may "be heard informally by the board." We note that, although this hearing may be "informal," it must be conducted on the record; otherwise the teacher's right to a review on the record would be meaningless.

be adequate." [6] On its face this section grants to a school board virtually unlimited discretion in deciding whether to deny continued employment to non–tenured teachers. Despite the broad language of the statute, however, we think that the board's discretion is subject to certain limitations. It is clear, for example, that a school board may not deny continued employment to a teacher because of the teacher's exercise of first amendment rights. *See, e. g., Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Just as clearly, a school board may not deny continued employment to a teacher if to do so would deprive the teacher of other rights that are guaranteed by constitution or statute. *See, e. g., Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973); AS 18.80.220 (declaring certain employment practices to be unlawful).

■ In addition to constitutional and statutory limitations, Shatting contends that a school board's discretion is subject to further limitation by the evaluation standards established by the Department of Education, and that a teacher may be "non–retained" only for failure to meet the evaluation standards.[7] He relies on 4 AAC 19.010: "[F]ormal evaluations shall serve as a method for gathering data relevant to subsequent employment status decisions pertaining to the person evaluated." We believe, however, that this regulation, promulgated by an administrative agency, cannot operate to limit the broad discretion that was intentionally given to local school boards by the legislature, and that a school board's decision not to renew the contract of a non–tenured teacher may be "for any cause which the employer determines to be adequate." AS 14.20.175(a).

■ Shatting also contends that the Board's discretion is limited by the requirement that it not be arbitrary or capricious,[8] apparently because the Board is required by AS 14.20.175(a)[9] to give him a statement of cause and a hearing. Assuming, *arguendo*, that Shatting is correct, our review of the record fails to convince us that the Board's action in this case was arbitrary and capricious.

The United States Supreme Court has held that a non–tenured teacher whose contract is not renewed has no *constitutional* right to a hearing or a statement of cause. *Roth v. Board of Regents*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). AS 14.20.175(a), therefore, in requiring a statement of cause and an opportunity to be heard, exceeds constitutional requirements. Since it is clear from the record that the Board fully complied with the statutory requirements, there was no violation of the Alaska Constitution or statutes. For these reasons, we conclude that the action of the Board was entirely proper.[10] This holding, we believe, is consistent with our past decisions, where we have stated that "[t]he rights of a non–tenured teacher who is simply not retained at the end of his period of employment are relatively limited. He has no constitutionally protected interest in public employment." *Van Gorder v. Matanuska–Susitna Borough School District*, 513 P.2d 1094, 1095 (Alaska 1973).

The judgment of the superior court is AFFIRMED.

RABINOWITZ, C. J., not participating.

---

**6.** AS 14.20.175(a) is quoted in full in note 2 *supra*.

**7.** 4 AAC 19.020 provides:
*SCOPE OF EVALUATION.* The evaluation should emphasize such factors as teaching or administrative skills, processes and techniques and interpersonal relationships with students, parents, peers and supervisors, as well as those additional factors which the school district considers relevant to the effective performance of its professional employ-ees. The standards for performance must be measurable and relevant.

**8.** *But see Roth v. Board of Regents*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**9.** AS 14.20.175(a) is quoted in note 2 *supra*.

**10.** Having reached this conclusion, we need not address the issue of whether the State may also be sued because of actions of the Board or the District. That issue is now moot.

**BOOCHEVER, Justice, concurring.**

I agree that there is a right to review the decision not to retain a nontenured teacher, and that that right is not to a trial de novo. I think, however, that we should delineate the nature of that right to review more particularly than does the majority.

In my opinion, the review should first assure that statutory procedures have been followed. This was clearly the case as far as Shatting was concerned. Second, the review should determine that the reasons set forth for nonretention are not a subterfuge for an impermissible reason, such as one based on the exercise of constitutional rights or in violation of rights guaranteed by the constitution. Third, I believe that there should be some evidence to support at least one of the reasons given for the discharge. In this case, two of the reasons given for the discharge were that Shatting's classes were not challenging enough to students with high ability, and he had a lack of interest in teaching. There was evidence sustaining those reasons. An affidavit was presented by Llewellyn Farmer, a teacher who had team taught with Shatting. She indicated that: Shatting appeared not to be interested in the teaching profession; he seemed to approach his class preparation in a perfunctory manner; he frequently used "game days and movie days" primarily for entertainment rather than instruction. The affidavit indicated that a conference was held between Shatting, the principal and Ms. Farmer concerning Shatting's lack of interest in teaching and interest in his students and that, after some improvement, Shatting reverted to his former attitude.

I therefore agree that there was adequate evidence to support a reason that was not an invalid or impermissible one for the nonretention of Shatting.

**MATTHEWS, Justice, concurring.**

Our cases establish that a party having standing may generally obtain judicial review of any administrative determination, at least for the limited purpose of ascertaining whether or not it is arbitrary, capricious, or an abuse of discretion. *Moore v. State*, 553 P.2d 8 (Alaska 1976); *K & L Distributors, Inc. v. Murkowski*, 486 P.2d 351 (Alaska 1971). This is true even in the face of a statute which declares that the administrative decision in question is not subject to judicial review. *K & L Distributors, id.* at 357–59. The presumption of reviewability which we have developed is mirrored in the decisions of many other courts, and is strongly supported by Professor Davis.[1] Therefore I have no hesitation in concluding that appellant has a right to judicial review under the arbitrary, capricious, or abuse of discretion standard.

Of course, this standard is not a very strict one, and any school district which has decided not to renew a non–tenured teacher's contract for valid reasons ought to be able to meet it easily. However, to use language which we quoted in *K & L Distributors* as an example, if a school district has used its non–retention power,

> (a) to retaliate against the person because of his political views or
> (b) to bear down on him for his religious views or his racial attitudes or
> (c) to get him out of town so that the amorous interests of a Board member might be better served

then the action would violate the standard. 486 P.2d at 355.

*Drown v. Portsmouth School District*, 451 F.2d 1106 (1st Cir. 1971) contains an apt explanation of the meaning of the arbitrary

---

1. *See* Davis, Administrative Law Treatise, Ch. 28 (1970 Supp.), and cases there cited. Davis states:

   Judges often are not qualified to substitute judgment on [complex or specialized] subject matter but judges are generally qualified to determine the reasonableness of the administrative action. Judges should inquire whether the action was "without a rational expla-

nation, inexplicably departed from established policies, or rested on an impermissible basis ... or ... on other 'considerations that Congress could not have intended to make relevant.' "

Davis, *id.* at 994, *quoting Wong Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715, 719 (2nd Cir. 1966).

or capricious standard in the context of a challenge to the non–retention of a non-tenured teacher. As the court explains, a decision to non–retain may be arbitrary or capricious in three ways. (1) It may be based on reasons which are "unrelated to the educational process or to working relationships within the educational institution"; (2) it may be based on reasons which are too trivial to justify the decision; or (3) it may be based on reasons which are factually unsupported. 451 F.2d at 1108.

In this case it appears that the Board's decision to non–retain was not arbitrary, since the decision was based on reasons which are related to appellant's on–the–job performance, the reasons are not trivial, and they are factually supported. I therefore concur in the decision reached by the majority.